IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DENNIS SANDERS, et al., )
 )
          Plaintiffs, )
 )
v. ) Case No. 20-1305-JWL
 )
ALLY FINANCIAL INC., d/b/a MOTORS )
INSURANCE CORPORATION, et al., )
 )
          Defendants. )
 )
_____)

## **MEMORANDUM AND ORDER**

This matter comes before the Court on defendants' motion to dismiss the claims asserted by plaintiffs in their amended complaint (Doc. # 42). For the reasons set forth below, the motion is **granted in part and denied in part**. The motion is denied with respect to the issue of personal jurisdiction. With respect to plaintiffs' defamation claim, the motion is denied. With respect to the claim for tortious interference with an existing contract, the motion is granted to the extent the claim is asserted by plaintiffs Sanders and Zero Hail; plaintiffs may amend the complaint, however, on or before **July 7, 2021**, to allege interference with contracts between those plaintiffs and G&G. With respect to the claim for tortious interference with prospective business relations, the motion is granted to extent the claim is based on relations with dealerships other than G&G.[1]

---

[1] The Court denies plaintiffs' request for oral argument on this motion (Doc. # 57).

I. **Background**

Plaintiff Dennis Sanders, a resident of Kansas, is a licensed public adjuster. Mr. Sanders is the sole member and operator of plaintiff USA Dent Company LLC ("USA Dent"), a Kansas limited liability company. Mr. Sanders is one of two members (and formerly the sole member) and is the operator of plaintiff Zero Hail Deductible by DCS LLC ("Zero Hail"), a Kansas limited liability company. According to the amended complaint, plaintiffs contract with dealerships to provide independent damage assessments of automobiles for use in pursuing claims with insurance companies. USA Dent had a contractual relationship with G&G, Inc. ("G&G"), a dealership located in Kansas.

G&G pursued a damage claim with its insurer, defendant Ally Financial, Inc. ("Ally"). Plaintiffs allege that on July 22, 2020, defendant Peter Mellos, an attorney acting on behalf of Ally, sent a letter to Russell Hazlewood, an attorney for G&G, in which Mr. Mellos made various defamatory statements about Mr. Sanders, and in which Mr. Mellos stated that his company would not perform concurrent damage assessments with Mr. Sanders and USA Dent. Plaintiffs further allege that defendant Nicole Beauchamp initiated correspondence and telephone calls with Mr. Hazlewood in which she "reiterat[ed]" the sentiments expressed in Mr. Mellos's letter concerning Mr. Sanders. Plaintiffs also allege that defendants accused Mr. Sanders of certain conduct in other correspondence and conversations with G&G representatives at an inspection in Louisiana, and that Ally would not allow its adjuster to perform an assessment while Mr. Sanders and his associates remained at an inspection site in Kansas.

In their amended complaint, plaintiffs assert claims against defendants in four counts. In Count I, plaintiffs assert a claim against defendants for defamation. In Count II, plaintiffs assert a claim against defendants for tortious interference with contract, based on alleged interference with a contract between USA Dent and G&G. In Count III, plaintiff USA Dent prays for relief from defendants based on a claim of "tortious interference with an existing business relationship" with G&G. In Count IV, plaintiffs assert a claim against defendants for tortious interference with a prospective business relationship.

## II. Motion to Dismiss for Lack of Personal Jurisdiction

Defendants Mellos and Beauchamp, residents of Michigan, move to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(2) based on a lack of personal jurisdiction. Plaintiffs bear the burden of establishing personal jurisdiction, but because this issue is being decided on the basis of the complaint and affidavits, plaintiffs need only make a prima facie showing of jurisdiction. *See Dental Dynamics, LLC v. Jolly Dental Group, LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020). All factual disputes are resolved in favor of plaintiffs. *See id.*

"To show personal jurisdiction over a nonresident in a diversity action, [a plaintiff] must demonstrate that jurisdiction is proper under the laws of the forum state . . . and that the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment." *See id.* Kansas law is construed liberally to allow jurisdiction to the full extent permitted by due process, and the Court thus proceeds to the constitutional inquiry. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998).

Under the Due Process Clause, the Court may exercise jurisdiction if two elements are met: the defendant must have purposefully established minimum contacts with the forum state; and the assertion of jurisdiction must comport with traditional notions of fair play and substantial justice. *See Dental Dynamics*, 946 F.3d at 1229. Defendants do not argue that the second element is not met here; thus the Court considers only whether there are the requisite "minimum contacts" here.

Plaintiffs do not contend that the Court may exercise general jurisdiction over the individual defendants, but rather they allege specific jurisdiction in this case. "The minimum contacts test for specific jurisdiction has two requirements: (1) a defendant must have purposefully directed its activities at residents of the forum state, and (2) the plaintiff's injuries must arise out of the defendant's forum-related activities." *See id.* (internal quotations and citation and footnote omitted). In this case, defendants argue that plaintiffs cannot meet the requirement of purposeful direction.

In assessing purposeful direction in the context of an intentional tort, such as those asserted in this case, the Tenth Circuit has employed a test requiring the following three elements: "(1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state." *See id.* at 1231 (citations omitted). In *Dental Dynamics*, the Tenth Circuit noted that this framework originally stems from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). *See Dental Dynamics*, 946 F.3d at 1231. The court further noted that the Supreme Court had elaborated on that framework in *Walden v. Fiore*, 571 U.S. 277 (2014), in which the Supreme Court made clear that the proper focus is on the defendant's relationship with

the forum state and that interaction with a resident of that state is not sufficient by itself. *See Dental Dynamics*, 946 F.3d at 1231 (citing *Walden*, 571 U.S. at 282-91). As the Supreme Court held in *Walden*, the *plaintiff*'s contacts with the forum state are not decisive, and thus "the plaintiff cannot be the only link between the defendant and the forum." *See Walden*, 571 U.S. at 285.

The Court concludes that this standard is satisfied in this case. Defendants' contacts with Kansas go well beyond the mere fact that plaintiffs, the alleged victims of the intentional torts, are Kansas residents. As alleged by plaintiffs, defendants made statements to a Kansas attorney (Mr. Hazlewood) for a Kansas company (G&G) for the purpose of affecting plaintiffs' business with that Kansas company. Moreover, the brunt of the injury alleged by plaintiffs relates to plaintiffs' relationship with that Kansas company.

Defendants rely almost exclusively on this Court's opinion in *Jayhawk Capital Management, LLC v. Primarius Capital LLC*, 2008 WL 4305382 (D. Kan. Sept. 18, 2008) (Lungstrum, J.). The Court noted in that case that under the applicable test it was particularly concerned with relationships in Kansas that could be negatively affected by the defendant's allegedly defamatory statements; and it concluded that that case was more similar to a Second Circuit case, in which jurisdiction was rejected, than it was to *Calder*, in which jurisdiction was permitted, because the community of business associates with whom the plaintiff's relationships were affected was not shown to be concentrated in Kansas. *See id.* at *3-6.

Mr. Mellos and Ms. Beauchamp argue that plaintiffs have not shown that the community of relationships affected by their alleged torts is focused in Kansas. In making this argument, however, defendants seemingly ignore the fact that their conduct was directed primarily at plaintiffs' relationship with one Kansas company, G&G, which fact compels the conclusion that Kansas was the focal point of defendants' intentional conduct. Moreover, the fact that defendants' statements did not merely concern Kansas residents but were made to a Kansas agent for a Kansas company further distinguishes this case from *Jayhawk*, in which the statements at issue were contained in a national press release that did not rely on Kansas sources. *See id.* at *4.

Defendants also argue that no contacts may be imputed to Mr. Mellos and Ms. Beauchamp from their employer merely by virtue of their employment. No such imputation is necessary here, however, as the individual defendants are alleged to have made the offending statements themselves.[2] Accordingly, the Court denies the individual defendants' motion to dismiss for lack of personal jurisdiction.

### III. **Motion to Dismiss for Failure to State a Claim**

#### A. *Applicable Standards*

Defendants move to dismiss plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6). The Court will dismiss a cause of action for failure to state a claim under Rule 12(b)(6)

---

[2] The Court also rejects defendants' argument that they should prevail simply because plaintiffs did not submit their own evidence in response to defendant's declarations. The Court's ruling is not based on specific jurisdictional facts disputed by defendants in those declarations.

only when the factual allegations fail to "state a claim to relief that is plausible on its face," *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic*, 550 U.S. at 555. The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

        B.    *Claim for Defamation*

        1.    Defendants move to dismiss plaintiffs' claim for defamation under Kansas law.[3] Defendants first argue that plaintiffs have not stated this claim with sufficient particularity. Defendants rely on *United States ex rel. Edalati v. Sabharwal*, 2019 WL 4736941 (D. Kan. Sept 27, 2019), in which the court stated that a plaintiff alleging defamation under Kansas law must allege specifically the defamatory words, the person communicating those words, the persons to whom they were communicated, and the time and place of publication. *See id.* at *2.

---

[3] The parties agree that plaintiffs' claims are governed by the substantive law of Kansas, where they suffered any financial harm. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (in diversity action, forum state's choice-of-law rules determine which state's substantive law applies); *Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683, 690 (D. Kan. 2007) (in case involving financial harm, court applies the law of the state of the plaintiff's residence).

7

Indeed, Kansas courts have applied such a pleading standard, but as this Court has noted, "the sufficiency of a complaint alleging defamation under Kansas law is judged under rule 8(a) instead of under Kansas pleading standards." *See Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1286-87 (D. Kan. 1997) (Lungstrum, J.). The Court further noted in *Bushnell*, citing the Wright & Miller treatise, that courts have construed a complaint by a stricter standard when the plaintiff is attempting to state a claim for a "traditionally disfavored" cause of action such as defamation. *See id.* at 1287 (citing 5A Charles A. Wright, et al., *Federal Practice and Procedure* § 1357). The stricter pleading standard applied in *Edalati* may be traced to this statement concerning disfavored causes of action. *See Edalati*, 2019 WL 4736941, at *2 (citing *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1271-72 (D. Kan. 2008)); *Fisher*, 531 F. Supp. 2d at 1271 (citing *Bushnell*, 973 F. Supp. at 1287).

The Court made its statement in *Bushnell*, however, before the Supreme Court clarified pleading standards in its *Twombly* and *Iqbal* cases, and the Wright & Miller treatise now states that the notion that a stricter pleading standard should be applied to disfavored causes of action has been cast into serious doubt, as such a standard appears to be inconsistent with Supreme Court precedent. *See* Charles A. Wright, et al., *supra*, § 1357. The Court thus concludes that it is not appropriate to apply a stricter pleading standard requiring a defamation plaintiff to allege certain facts with particularity.

The Tenth Circuit has held that in the context of a defamation claim Rule 8(a) "requires that the complaint provide sufficient notice of the communications complained of to allow [the defendant] to defend itself." *See McGeorge v. Continental Airlines, Inc.*,

8

871 F.2d 952, 955 (10th Cir. 1989). Applying that general standard under Rule 8, the Court concludes that plaintiffs have alleged sufficient facts to state a claim for defamation here. Plaintiffs have alleged specific statements from a particular letter from Mr. Mellos to Mr. Hazlewood, and they have further alleged that Ms. Beauchamp expressed similar sentiments in communications with G&G. The Court concludes that such allegations provide sufficient notice to defendants in this case, and defendants are able to mount their defense, as additional details may easily be requested in discovery. The Court therefore denies defendants' motion for dismissal of the defamation claim on this basis.

2. Defendant Ally seeks dismissal of the defamation claim as asserted against it. Ally argues that plaintiffs have not alleged any statements made by Ally, as plaintiffs have not alleged expressly that Mr. Mellos and Ms. Beauchamp were employees of Ally. Ally insists that those individuals were employed by Motors Insurance Corporation ("MIC"), as shown by the fact that Mr. Mellos's letter was sent by him as counsel for MIC on MIC letterhead.

The Court denies this motion to dismiss the defamation claim as asserted against Ally. As plaintiffs note, they brought this suit against Ally doing business as MIC, and they allege that Mr. Mellos wrote the letter on behalf of Ally. Thus plaintiffs have alleged defamatory statements made by Ally through one or more of its servants. Whether the individual defendants were employed by or acting for Ally and thus whether Ally made any of the allegedly defamatory statements presents a question of fact that may be addressed at the summary judgment stage or at trial.

3. Finally, the individual defendants argue for dismissal of the defamation claim as asserted against them on the basis of their qualified privilege. Under Kansas law, a "qualified privilege exists with respect to business or employment communications made in good faith and between individuals with a corresponding interest or duty in the subject matter of the communication." *See Knudsen v. Kansas Gas & Elec. Co.*, 248 Kan. 469, 481 (1991) (citing *Turner v. Halliburton Co.*, 240 Kan. 1, 7-8 (1986)). Defendants argue that such a privilege applies here.

The Court rejects this argument for dismissal. Defendants have not provided any authority supporting dismissal of a claim on this basis at the pleading stage. The existence of the privilege depends on factual issues, including issues concerning the good faith and intent of the defendants, and the Court cannot conclude as a matter of law based solely on the complaint that the privilege applies here. Moreover, defendants have not addressed the fact that under Kansas law the privilege may be overcome, for instance if the defendant acted recklessly or with ill will. *See Knudsen*, 248 Kan. at 481. The privilege constitutes an affirmative defense, *see Turner*, 240 Kan. at 7-8, which plaintiffs need not anticipate in stating a claim in their complaint, *see Bistline v. Parker*, 918 F.3d 849, 876 (10th Cir. 2019); and plaintiffs have alleged actual malice here at any rate. Accordingly, the Court denies the motion to dismiss the defamation claim on the basis of a qualified privilege.

### C.  *Claims for Tortious Interference*

Defendants seeks dismissal of plaintiffs' tortious interference claims. Count II in the amended complaint asserts a claim for tortious interference with contract by all plaintiffs, but the claim as stated in that count is based only on a contract between G&G

and USA Dent. In their motion for leave to amend the original complaint, plaintiffs stated that the amended complaint (if permitted) would assert a claim in Count II only by plaintiff USA Dent. Count III of the amended complaint purports to assert a claim by all plaintiffs for tortious interference with existing contractual relations, based on relationships with G&G, although the prayer at the conclusion of Count III seeks relief only for USA Dent. Finally, in Count IV of the amended complaint, all plaintiffs assert a claim for tortious interference with a prospective business relationship, based on relationships with companies other than G&G.

In its brief in response to the instant motion to dismiss, plaintiffs explain their intent in pleading their tortious interference claims in the amended complaint as follows: All tortious interference claims were intended to be asserted by all three plaintiffs, notwithstanding Count III's prayer (which was a scrivener's error). Plaintiffs intended in Count II to assert a claim for tortious interference with contract based on a written contract, while they intended in Count III to assert the same claim based on other (non-written) contracts. Plaintiffs have now discovered written contracts with G&G involving the other two plaintiffs as well (Mr. Sanders and Zero Hail), and they therefore wish to assert Count II on behalf of all three plaintiffs.

The Court begins by noting that although plaintiffs use three counts, only two different torts under Kansas law are at issue here. Like the Restatement, *see* Restatement (Second) of Torts §§ 766, 766A, 766B, Kansas law generally divides the concept of tortious interference into two distinct torts: tortious interference with a contract and tortious interference with a prospective business relationship. *See Cohen v. Battaglia*, 296 Kan.

542, 546 (2013). "While these torts tend to merge somewhat in the ordinary course, the former is aimed at preserving existing contracts and the latter at protecting future or potential contractual relations." *See id.* (quoting *Turner*, 240 Kan. at 12). The elements for the torts are similar, except that a contract and its breach must be shown to establish the first tort, while the second requires proof of "the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff" and "a reasonable certainty that, except for the conduct of the defendant, plaintiff would have continued the relationship or realized the expectancy." *See Cohen*, 296 Kan. at 546. The Court thus considers the extent to which plaintiffs have alleged facts to support plausible claims for each of these two torts.

In the amended complaint, plaintiffs have alleged an existing contract only between G&G and plaintiff USA Dent, and a plausible claim for tortious interference with contract based on that contract could only be asserted by that party, as plaintiffs have not argued or alleged any basis for another plaintiff to recover for interference with that contract. The amended complaint does not contain any reference to an existing contract between G&G and plaintiff Sanders or between G&G and plaintiff Zero Hail. Thus, no plausible claim by Mr. Sanders or by Zero Hail for tortious interference with contract has been alleged. Plaintiffs argue in their brief that these two plaintiffs did have existing contracts with G&G, but no such contracts have been alleged. Accordingly, the Court grants defendants' motion to dismiss the claim for tortious interference with contract as asserted by plaintiffs Sanders and Zero Hail. Plaintiffs are granted leave to amend this claim, however, by filing an amended complaint on or before **July 7, 2021**, to identify particular contracts with G&G

on which plaintiff Sanders or plaintiff Zero Hail may base a claim for tortious interference with contract.

The Court next addresses plaintiffs' claim for tortious interference with a prospective business relationship. Defendants do not challenge this claim to the extent based on plaintiffs' relationships with G&G, but they seek dismissal of the claim to the extent based on relationships with any other auto dealerships, as plaintiffs have not identified any other such dealership in the amended complaint.

Courts have generally required plaintiffs to identify entities with whom they had business relationships with which the defendants tortiously interfered. *See, e.g.*, *Snyder Ins. Servs., Inc. v. Kulin-Sohn Ins. Agency, Inc.*, 2018 WL 2722500, at *3 (D. Kan. June 6, 2018) (simply alleging future business opportunities with unspecified people is not sufficient to state a claim for tortious interference with a prospective business relationship). As the Kansas Court of Appeals has stated, a particular business expectancy must be alleged "in order to move the claim from the realm of defamation to the realm of tortious interference." *See Meyer Land & Cattle Co. v. Lincoln County Conservation Dist.*, 29 Kan. App. 2d 746, 752 (2001).

Plaintiffs cite their allegation of a reasonable certainty of the loss of future business, but they concede in their brief that they cannot presently identify any particular dealerships (other than G&G) from whom they would have received business in the future but for defendants' conduct. Thus plaintiffs have conceded that they can presently allege only a generalized loss of business. Such an allegation may support a defamation claim, but it does not support a plausible claim of tortious interference with a prospective business

relationship. Accordingly, the Court grants defendants' motion to dismiss plaintiffs' claim for tortious interference with a prospective business relationship to the extent based on a relationship with any entity other than G&G.

IT IS THERFORE ORDERED BY THE COURT THAT defendants' motion to dismiss (Doc. # 42) is hereby **granted in part and denied in part**, as set forth herein. Plaintiffs are granted leave to amend their claim for tortious interference with an existing contract, on or before **July 7, 2021**, to allege interference with contracts between G&G and plaintiffs Sanders and Zero Hail.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff's request for oral argument (Doc. # 57) is hereby **denied**.

IT IS SO ORDERED.

Dated this 22nd day of June, 2021, in Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge